United States v. Henson, 19-3062. Would Appellant's Counsel make her appearance, please? Yes, Your Honor. My name is Blair Westover and I represent Defendant Appellant Mr. Stephen Henson. I guess the issue that I would like to start, I was hoping to start out addressing today is the choice of counsel question. In this case, it seems to be sort of agreed by all the parties that there was actually no conflict of interest between Dr. Henson and Mr. Torres or Mr. Robinson based on their, the fact that Mr. Kearns represented them in earlier cases. At this point, I think everybody agrees that there was no justification for or preventing Mr. Kearns from cross-examining Mr. Torres. What's the source of that statement? I mean, we're in the government's brief that they concede that there was no conflict. To be fair, they didn't concede, but they also didn't argue that there was a conflict in any way. And I just don't think there's any basis to conclude that there's any relationship between Mr. Torres's 2006 drug case and the Dr. Henson's case. Well, they raised it below and they considered it to be important below. And so I'm not, well, I'm sure we'll hear from Mr. Brown, but I doubt very seriously he's going to respond that there is no problem there. And why don't we start with the premise that is there, was there really a ruling by the district court to begin with? The district court was of the view that it had not made a ruling. When I look at the transcript, I'm having a hard time disagreeing with the court. So explain that for me, please. Sure. I think that the ruling, the sense in the post-trail motion where the district court said that there wasn't a ruling was a sense that it left open the possibility of a taint team approach. I think if you look at the transcript from the July 17th hearing, it's hard to read that and say that the question of whether or not there was a conflict of interest was up for debate. I think the word likely, likely inclined, as it pointed out in its order, it was inclined to rule that way. And so, yes, it says the, and I'm looking at the court's order, that a conflict of interest likely existed, likely does not mean definitive. And even if that were, even if the court had been inclined to rule, it allowed for things to neutralize a potential conflict, right? Uh, what it said was if there is some other approach that can be agreed on by the parties by Friday, the Friday following the hearing, obviously, um, that it might be willing to entertain that. I'm sorry. Yes. Seymour, please. Was there any discussion between the parties about an alternative approach that isn't included on the record? Um, so I can't answer that question. I can speculate. Um, but I don't know if there was no conflict, then I don't know that any other approach could be imposed on Mr. Curtin, right? Because if there's no conflict, then the district court isn't, then there's no justification. It would be equally as arbitrary to say, well, we need a tape team or you can't cross examine Mr. Torres, um, as it would be to say, well, you have to get waivers if that makes sense. So, but the court was clearly willing to discuss it further, wasn't it? I think it was willing to entertain briefing on whether or not a conflict could be ameliorated by some sort of taint team approach. I think that's fair. Yes. Well, counsel, what the court said at the end of what I can see in the decision was, and if I haven't heard from you by Friday at nine o'clock that you have obtained the waivers absent some further authority of which I presume none was provided, I intend to find that there is an irreconcilable conflict of interest and Dr. Henson's going to have to obtain different counsel. So you, you would take that basically as a finding that unless somebody gives me some other authority and nobody did, I'm going to find a conflict. And so you need to get me waivers or propose some other alternative way to deal with this conflict that I've found essentially. Is that how you're, you are interpreting it? Yes, that's how we're interpreting it. And I think any residual ambiguity and what the court meant was cleared up because the court in its minute order granted Mr. Kearns's motion to withdraw for the reasons stated in the July 17th order or July 17th hearing. I'm sorry. So yeah, I'm sorry. Go ahead, please. Oh no. So I was just going to the court set conditions that had to be met by nine o'clock on Friday. And if those conditions weren't met, then Mr. Kearns didn't really have the option of staying on the court on the case. Go ahead, judge. Well, so isn't your issue really with the finding that there was a conflict? Because yeah. So, okay. So, and I, so when you stated at the beginning of the, of the argument, I thought you stated that you didn't think anybody contested that there was a conflict or that there, are you saying no one contested that there was a finding on the conflict? No one's, I don't think that the government, the government in its, I'll rephrase, the government in its briefing before this court did not argue that a conflict of interest exists or that requiring waivers was justified. You did however, you did however. I did in the opening brief, they did not respond to those arguments. And can we talk about that a little bit or are you, I guess I'm, I didn't see you cite anything really on point at all to suggest that where you've got an attorney who has represented not just a witness, but a co-defendant who is testifying and has, he's previously represented him in a, a drug crime capacity. I didn't see anything that you cited that would indicate that, that Judge Martin's ruling was wrong as far as the, I think this was Judge Martin, as far as the, the conflict itself. Sure. And again, the government didn't really respond, but I think this court has said, the question is whether or not there's factual relationship between the underlying cases, right? So here we don't, the government didn't do a lot of the district court level to develop what the facts were of Mr. Torres' 2000 case. So we don't, 2006 case, so we don't know a lot, but it appears to be a simple, and the burden is on the government to establish the conflict because they're the ones moving for disqualification. But we know from the transcript that Dr. Henson didn't even meet Mr. Torres until 2015, which was almost a decade after the 2006 conviction. So other than the mere fact that they are drug cases, I don't think there's any, there's nothing that links the two together. I mean, I think it's probably unlikely, but again, I don't know that the 2006 case involved a doctor, right? And to be fair, I think there were two 2006 cases that were sort of joined together, but again, the record isn't clear on that. And this court does have case law that says, you know, if the only possible reason, the only possible source of the information, the only way that the information from the earlier case is related is sort of an impeachment or collateral matter, that that's not sufficient to create a conflict of interest. The question is substantial. Was that a co-defendant situation? I'm not sure if that was a co-defendant situation. Don't you think that's significant? Why doesn't that matter to you? I don't think it matters to me because I don't understand, there's no, Mr. Kern's cross-examination of Mr. Torres couldn't have any impact on the 2006, the, it doesn't, nothing about the 2006 case could be relevant to the cross-examination. It has to be materially opposite on a substantially related case, right? What the district court judge alluded to was knowledge that Mr. Kern may have of the drug history of Mr. Torres. And if he were restrained in his cross-examination of Mr. Torres because of adhering to attorney-client privilege, he would harm or impair his duty towards Mr. Henson. If he did not, wasn't restrained, then he would have a breach on the other side vis-a-vis Mr. Torres. And I mean, the idea that Mr. Torres could have told him things about his drug history, how he did things, all those sorts of things, it becomes arguably, and this is where I'd hear your response to Judge Moritz's point, it becomes material because Mr. Torres is most likely, more likely as a co-defendant to have knowledge about Mr. Henson that could be damning. And if, if Kerns restrained himself, that could hurt Mr. Henson. I don't, well, first of all, obviously Mr. Kerns didn't recall any such, anything about Mr. Torres. So I don't think there's a risk of that here. More importantly, the speculation that an attorney might, there are specific cases, and I'm sorry, I don't recall off the top of my head exactly what those were, I can look them up. Are those cases in your brief? Yes, in the brief, in our opening brief. Let's say that you can't, mere speculation that an attorney might later remember a fact is not sufficient to establish a conflict. The rule, the model rule, excuse me, the model rule 1.9 says there has to be a substantial relationship. That's the test recognized by this court. And the substantial relationship has to be a relationship about the facts. Let me ask you two questions. One is, let's assume, and I'm not asking you to agree, but assume for the moment that Mr. Kerns, as the district court judge suggested, short-circuited the process by withdrawing before there was an actual determination made as to whether he could proceed or not. In other words, proceed with any humiliative effort, proceed before there was a finding of conflict. If that, in fact, happened, is this issue waived? Because he has abandoned the issue in the district court, intentionally abandoned it, and at least under our jurisprudence, they would suggest to me that there's waiver. I'm asking this, the built-in assumption, I'm not holding you to anything, but that's the assumption. Is that a waiver? My position would be because Mr. Kerns went so far out of his way to say that he was intending not to waive, that it shouldn't be a waiver in this case, but I do take your point. I just think that Mr. Kerns, in his motion, was like, I'm trying not to waive here. I think there was an error. I don't want to withdraw. I'm very puzzled by why what the lawyer said matters at all. I mean, the fact that the lawyer is trying to interject an issue to be preserved, and the fact that the you're making me do it, your honor, well, what difference does that make? If the objective fact is not that that's what happened, whatever he wants to say in his pleading doesn't change the reality. It's not like, sure, the court could have kept him in, but if he had already indicated that he was going to withdraw, he's withdrawing. I mean, what else is there to do? The district court also granted it for the reasons stated in the July 17th hearing. And those reasons could be that it had not made a ruling. They asked him to do something, and he didn't do it. Asked him to present authority, asked him to present a waiver, asked him to explore other options, including a tank team. None of those were done, right? And I understand what your honor's point. My point is that each of those options, if there was no conflict, would themselves have been arbitrary, right? Like if the requiring of waivers would have been arbitrary, and this does assume that there's no conflict, obviously, but if there's no conflict, then you can't impose the tape team. There's because that too would be arbitrary. I guess my response to the rule, the rule that you would postulate is that if the court's underlying determination was arbitrary or wrong, then Mr. Kearns did not even need to attempt to comply with it. I think he did attempt to comply. He tried to get the waivers. He couldn't get the way to do any of the other stuff. At least the record shows it. There's no evidence in the record that he tried to reach an agreement with the government. I don't know if there was discussions with the government about the tank team. It's just not something that was on the record. I would, if possible, like to I assume I'm unmuted and everybody can hear me. Yes. Yes, your honors. Uh, your honors. I'd like to start with five main points on issue one. Would you just state your name for the record, Mr Brown? Just so we have it. James Brown appears for the United States. I would like to start with five main points on issue one that we think are dispositive of issue one. And they're factual points. The first point is that counsel was never disqualified ever. That's uncontested. Number two. The second point is that there was never a finding by the district court that there was an irreconcilable conflict. That is not contested. Point number three. It is not contested that the district court never ordered the imposition of any condition on counsel's representation of defendant. Subpoint under three. A finding of a conflict by itself does not impose any condition on the representation. Subpoint under three. The district court never ordered counsel to obtain conflict waivers as a condition of representation. Point four. And this is very important and it's overlooked. The conflict was easily remediable. And defendant acknowledged that in the district court. On pages 152 and 153 of the defendant's appendix in his memorandum on a rule for memorandum in support of motion for new trial, he says standby counsel could have easily been obtained to cross-examine former client witnesses. And he also says that the district court failed to permit a tape team. And he said that could have been a remedy. So the conflict, my point four, was easily remediable and defendant acknowledges this. Point five. Counsel withdrew before the district court imposed any condition on counsel's representation and before counsel explored any remedies that could have remedied the conflict and thereby short-circuited the whole issue. Well, that's what the district court said. The defense has taken a different position on that as you have heard. So that's certainly not undisputed. And why don't you respond to the argument that at least as I understand it from the defendant, which is that to the extent that the district court imposed an arbitrary determination of conflict, in other words, the district court, well, not only was wrong, but arbitrary in doing so, that any subsequent conditions, i.e. waiver, tape team, et cetera, were things that really were not things that the defendant should be held to in terms of complying or not complying. Well, we think that that whole postulation of the district court or the whole postulation that your honor has offered is based on a hypothecation that never happened. It's based on the hypothecation that the district court actually made a finding of conflict, of an irreconcilable conflict, and it never made such a finding. It said, I intend to find that there's a conflict. Whether or not there was an actual conflict is a red herring because the district court never made a finding of an irreconcilable conflict. There's nothing about that that could have implicated defendant's Sixth Amendment rights. His Sixth Amendment rights are only implicated if the district court makes an that can only occur if there's an order qualifying some aspect of that representation, and here there was never even a finding of a conflict by the district court. There was an advisement that was non-binding. It was a statement of intention. The district court said it was not final. The district court offered alternatives. Defendant admitted in the district court that there were, it could have been remedied easily in his words, and then he withdrew before any alternatives. The fact that whether there was a conflict or not is a red herring. Whether we can argue about it, that's a red herring. No finding of an irreconcilable conflict was ever made on this record. That's our point about that. So we think it's a red herring. Debating whether there's a conflict is just, it's an irrelevancy on this record because the district court never made a finding. You don't have an unreasonable or arbitrary interference with the right to counsel. Well then, I understand the point and you've stated it emphatically, but let me ask you to assume, Ben, that there was a finding and that it was arbitrary. Was there any obligation of defense counsel to at least try to pursue the options that were available? In other words, to consider additional authority, which presumably meant additional briefing, was there some obligation to do something even before withdrawing? And note, I'm asking for the assumption here that there was a finding and the finding was you can take it to be arbitrary if that'll make you feel better about it. That's the assumption. The court is assuming that there's an arbitrary finding of conflict that was incorrect? Yes, and I'm asking what obligations, is there still an obligation on the defendant in that defense counsel in that situation to do something? In other words, other than just withdraw, is my point. Would that relieve the defendant, defense counsel, of any obligation to do anything else but withdraw? Your honor, if the court made it, say, an incorrect conflict finding and made that final on the parties, we think that that conflict finding by itself does not impose any condition of representation on the defendant. If it's not unaccompanied by some other thing, other requirement that would serve as a remedy, such as obtaining waivers or a tank team or something, if defendant wants to pursue his district court for abridging those rights, yes, he has a duty to explore alternatives to get around the conflict. And that's, I guess, what I'm getting at. Maybe I'm not being as clear as I should be, but I'm just trying to follow up on defense counsel point so I can understand this position better and get your response to it. All I'm asking is simply, does, would, let's use this case, okay, with a certain assumption. The assumption is arbitrary finding. The conflict finding was arbitrary. Would Mr. Kern, in that situation, still have been obligated to say, all right, your honor, I object to your finding, but I'm going to present to you waivers and preserve my rights. I object to your finding. I'm presenting authority or I'm getting a tank team, but to preserve, but I believe your decision was wrong. I mean, would he be still required to do something in order to save this issue other than withdraw? Yes, that's required for garden variety preservation of an appellate issue. You can't just withdraw in the absence of a court order and say, oh, the court may be withdraw, or I withdrew because I thought the court might order something in the future that the court never even ordered on the record. But you have to preserve an issue and you do that by letting, you have to have an order of disqualification before you can, that is accompanied by unreasonable conditions and then object to that before you get it preserved for appeal. Otherwise, there's not even a patina of a Sixth Amendment argument. It's not even a gloss. There's no, there's not a Sixth Amendment argument. I'm not sure, Mr. Brown, it seems like what the court said here in his final words was you either get a waiver by nine o'clock on Friday or you get me some other authority and perhaps counsel had no other authority. Perhaps counsel had given all the authority it had on this point. So you give me the waivers and if counsel couldn't get a waiver by nine o'clock and it didn't have any further authority, then it understood, the counsel understood that the judge was going to find an irreconcilable conflict. I'm not sure how much more counsel needed. If you can't get a waiver, and let's say he can't, and you don't have any other authority and he's already given it to the court, I'm going to find an irreconcilable conflict. Why does counsel have to do more than just simply say, I can't, I can't satisfy those conditions. Therefore, you know, we've got, you're going to issue your order and I'm going to withdraw. Does he, is there, does it matter whether he waits for the court to issue the formal order or, I mean, why does it matter? Well, it matters because withdrawing without a formal order equals a voluntary, equals a voluntary withdrawal and you cannot predicate a Sixth Amendment violation when you voluntarily withdraw from the case. I'm saying how voluntary is that, I guess is what I'm saying. When he said, I've given you all my authority judge, we've argued the issue, I've told you what I got, I've told you why I don't think there's a conflict, you've said there is, I don't have any further authority, you've told me to get a waiver, I can't get a waiver, let's, you know, we're done. Number one, three responses, Your Honor. Number one, he admits it's voluntary. He frames the issue in his brief as a voluntary dismissal. So now to, on appeal, say, oh, maybe that wasn't voluntary. There's no evidence that it wasn't voluntary. He says it's voluntary. Number two, in the passage from the district court that Your Honor cites, the district court in that very same passage says, by nine o'clock, I intend to find this, intend is not in order, it's not final, and the court said, unless the parties can agree on some other approach, so that put the defendant on notice that there was, there's, this is not final, but made it explicitly non-final, and then the court suggested a tainting approach, which made it even more explicitly non-final. So he could not have walked away from that interaction thinking that there was any final order. There wasn't. It was explicitly non-final. And, but, but he, he, he wanted to, he wanted to create this structural issue, so he withdraws, and that's what he did, and there was no factual basis for it. So unless the court has further issues on issue, issue one, I'd like to move to issue two if I can. Why don't you, and I don't know whether issue two, the issue I want to talk about for a little bit is the deliberate ignorance or will issue. Why don't you just respond, if you will, to the notion that there may not have been independent evidence that would, would support that particular instruction. All right. So, you know, that, that is the, that is the second of, of our third of our three arguments on this point. If I could just talk about the first and third arguments and then get to your honor's point, and I'll be, I'll be brief. Number one, he's not entitled to review on this issue. The district court, the district court properly instructed the jury on an actual knowledge issue. He doesn't contest that on appeal. This court's cases, the Hillman case and the Corrales case say you're not entitled to review, so he's not entitled to review. Third, my third point, and the court asked about the second, the third point is we have proved up actual knowledge. The jury was properly instructed on actual knowledge. We proved it up, so any error given the instruction was harmless. That's our, that's our third point on this issue. Now I'll challenge the, the evidence on actual knowledge, right? Correct. And see the evidence of actual knowledge. Correct. That's why he's not entitled to review. This court has a case right on point. Now the court has asked your honor judge Holmes, is it not that he's entitled to review or he loses? I can go back and look at the case, but I don't entitled to review always sounds like there's some sort of jurisdictional bar. I mean, I think the case spoke of, well, it is, it is, it is jurisdictional. And, and if you look at Hillman and Corrales, the court declined review of the sufficiency of the evidence supporting the deliberate ignorance instruction when defendant failed to challenge the sufficiency of the evidence concerning his actual knowledge when it was proved up. Corrales stands for the same proposition. The Griffin case that defendant cites in his brief stands for exactly the same proposition at 502 U S page 57, where the Supreme court ruled that an offense can be committed by two more means. A guilty verdict will be sustained when the evidence is sufficient to support one of the means, even if the evidence will not support any alternative means. So it is a jurisdictional issue. The court's instincts are absolutely correct. Well, I don't think the court, I am, I'm not saying it was a jurisdictional issue. And that's not what the court said. It did say, we need not determine this issue. So he loses. I mean, I don't think there's a word jurisdiction in there and I'm not trying to split hairs. I'm just trying to be precise here. I don't think the question is that we dismiss this, uh, portion of the appeal. It's just a question of whether you would lose or not. I think, I think, I think it's jurisdictional. I'll find some, I'll find some authority for that. Okay, fine. You can move on to the third point then. Okay. The third point is we proved up actual knowledge. He does not contest it. It's undisputed that we proved up actual knowledge. He does not contest the sufficiency of our proof on the actual knowledge prong and the jury was properly instructed. Therefore, the error was harmless if there was error. And the third point I'm trying to get at is what evidence did you have? Discrete evidence of deliberate ignorance. Okay. So the evidence we had of deliberate ignorance is that, uh, the defendant was number, he was told that his patients were actually diverting their medications. He wrote opioid prescriptions without even seeing patients, without even, without even seeing them. He wrote, he wrote prescriptions. He sent text messages to his patients, basically showing that he actually thought they were diverting and padding their supplies for resale. He didn't perform any physical exams on his patients or very limited physical exams, and he did not use any drug urine screens. With all this, what we're saying is, and this is, this, this conduct is comparable to the conduct referenced in the for the deliberate ignorance instruction. And what this shows is that he, he subjectively believed there was a high probability that his patients were diverting their meds or didn't need their meds. And he didn't take, he didn't take any actions at all to, to see that he, that they were not, that they needed the meds or that they were not diverting their meds because he didn't do urine screens. He didn't do physical exams. He didn't do anything. So that's why we think the is warranted. And the Dileo case is probably the best factual case for us. The court gave some other cases. You're running over Mr. Brown. I'm sorry. At the court has, I'll stop right now. If the court doesn't have any further questions, thank you for your time. All right. Thank you. Defense counsel, please. Thank you, your honors. I guess, so the choice of counsel question, I didn't see any, don't recall seeing any case law in the government's brief. And I certainly haven't run across a case that says formal disqualification is necessary to preserve a choice of counsel issue. And it seems to me not entirely uncommon that at least, you know, in the sort of case where a defense attorney asks for a continuance to accommodate his trial schedule, right. And the district court denies that continuance. Defense attorney withdraws and no one says, well, the choice of counsel issue wasn't preserved because the defense attorney didn't do more to maybe accommodate that trial versus the other one. Right. It seems to me that as long as the defense attorney is moving to withdraw, and it's clear that he's doing so in response to the district court's order, then the choice of counsel issue should be preserved. Well, the question is whether there was an order again, right. And I understand that's talking about, right. And I understand that assumes that I just, but also, also, and this, this was in connection with the briefing below is the question of remedy. And, and the court, even if we assume the court made a conflict determination in order to fully preserve this, wouldn't he have to say that at least make a record to the effect that all his document talked about was waiver. Your honor, I haven't consistent with what judge Moritz said. I have no authority. I, I, your honor, I explored these options. None of these options are available. And at that juncture, he could have proceeded on with he, well, if he was going to withdraw, he would withdraw at that point. And he would have, he would have preserved the issue. It's just the question that, that troubles me is the line of reasoning that says that when the court makes a ruling that you just think is crazy, that you can just say, all right, well, I'm out of here. I mean that, you know, there's nothing else for me to do and I'll just, I'll just take it up on appeal. Don't you have to make sure that there's, that you've locked in your position? If I can just answer your question, I realized that I'm over. It's my position that if the court said the court, the conditions that the court laid out were get the waivers, do the, find a solution with the government that allows for a taint team, figure something out by nine o'clock. And if you haven't, I'm going to find an irreconcilable conflict. And I think by setting the conditions that way, the fact that they didn't obtain by nine o'clock on Friday, for whatever reason, it sort of exhausted all of his obligations, I guess, is my explanation there. For all we know, the government just didn't agree to the taint team, but we don't know. Well, we do know some of the briefing in the, in, in response to the motion for new trial, where they said we could have gotten a taint team. We could do the briefing for the motion of a new trial. So focus on the inadequacy of, well, the inappropriateness of the court, imposing the waiver obligation and said, we could have done these other things, your honor, but you know, we didn't have a chance. So we do know that those things were on the table and they were viable because the defendant told us they were, right? I disagree with that, if only because that briefing wasn't written by Mr. Kern. So we don't know what the plausibility of the taint team is. Oh, that doesn't, your response, the defendant's responsible for that. That's his lawyer, right? I understand that. I don't think that the statement that a taint team could be obtained objectively easily, I don't think says that Mr. Kern's intentionally chose not to do so. I think that's a different question as a factual matter. All right. With that, your honor. Thank you very much. Thank you counsel for the good arguments. The case is submitted.